SCHREI et al. v. MORRIS et al.

(Circuit Court, N. D. Illinois. April 12, 1898.)

No. 24,328.

PATENTS—INVENTION—REFRIGERATOR CRATES.

The Schrei patent, No. 547,185, for a refrigerator crate for use in shipping perishable articles, construed, and *held* void for want of novelty and invention.

This was a suit in equity by William A. Schrei and Hiram Mills, doing business as Schrei & Mills, against Nelson Morris, Frank E. Vogel, Edward Morris, and Herbert N. Morris, co-partners as Nelson, Morris & Co., for alleged infringement of letters patent No. 547,185, issued October 1, 1895, to William A. Schrei. The invention is thus described in the specifications:

"This invention relates to certain new and useful improvements in refrigerator crates which are designed for use in shipping perishable products, the aim of the invention being to produce a shipping box or crate, for the purpose described, which will be simple in construction, which may be used in one shipment of perishable goods, and then at its destination be destroyed, to save the expense of its return to the shipper. A further object of the invention consists in the provision of a water-tight cold-conducting separator between the perishable products contained in the box or crate and the ice receptacle above, the edges of the separator overlapping the edges of the box, to prevent the water from the melting ice entering the receptacle containing the products being transported. To these ends, and to such others as the invention may pertain, the same consists, further, in the novel construction, combination, and adaptation of the parts, as will be hereinafter more fully defined in the appended claim. I clearly illustrate my invention in the accompanying drawings, which, with the letters of reference marked thereon, form a part of this specification, and in which drawings similar letters of reference indicate like parts throughout the several views, in which Fig. 1 is a perspective view of the crate closed in shape for shipment, with overlapping frame for ice receptacle. Fig. 2 is a perspective view of the crate closed in shape for shipment, with cleats for fastening ice receptacle to box. Fig. 3 is a vertical longitudinal section through the crate, with overlapping frame for ice receptacle. Fig. 4 is a vertical longitudinal section through the crate, with cleats for fastening ice receptacle to box. Reference now being had to the details of the drawings by letter, A designates the box or receptacle designed to hold the perishable products to be transported, and on its under side is provided with the cleats, B. D is a framework which is provided to retain the ice, and is adapted to rest on the cleats, C, at each end of the box, A, the ice resting on the sheet-iron or metallic cover, E, which has its ends bent down over the ends of the box, so as to allow the water melting from the ice to be conveyed off, and not allowed to enter the box containing the perishable products. F is a cover for the framework, D, and is designed to be nailed or otherwise secured thereto. From the above it will be seen that the whole purpose of the invention is to provide a simple, inexpensive refrigerator shipping crate, which can be constructed so cheaply that it would not pay to return the crate for a second shipping. The ice-retaining frames may be securely held to the sides of the box or fastened by means of cleats, G, which are perpendicularly secured at their upper ends to the outer corners of the ice-retaining frame, the free ends of said cleats extending down over the meeting edges of the frame, metallic cover, and box, and adapted to be secured to the said box by any suitable means, and the ice contained within its inclosing sides and on

the metallic separator will cause the contents of the box to be kept cool by the natural tendency of atmosphere to settle. In Figs. 1 and 3 of the drawings I have shown a slight modification in the form of the crate. In this modified form the vertical cleats, G, at the corners of the crate, are dispensed with, and the upper portion of the crate is fitted down over the upper edges of the lower portion, resting upon the horizontal strips, C, as shown in the drawings.

"Having thus described my invention, what I claim to be new, and desire to secure by letters patent, is: As an improved article of manufacture, a refrigerator shipping crate, having in combination with the box, A, a metallic plate, E, with its edges bent over the upper edges of said box, an inclosing frame, D, adapted to rest on said metallic plate, the cleats, G, secured at each corner of said frame, and their free ends extended down over the meeting edges of said frame, plate, and box, and of a cover, F, all substantially as shown and described."

Carter & Graves, for complainants.
Bond, Adams, Pickard & Jackson, for defendants.

SHOWALTER, Circuit Judge. I was under the impression at the hearing of this case that the absorption of the water from the melted ice by the wooden sides of the box, A, of the device, and the process of evaporation therefrom, might distinguish the combination in suit as something novel; but, on reading the expert testimony, specification, and the claims, I am unable satisfactorily to sustain the patent on this ground. The sides of the cover, E, are bent over, according to the showing of the specification, merely to run the water off. It is not a feature of the claim that the sides of the box, A, are made of wood, nor in the specification does it appear as part of the invention that the water must run down the sides. The expert, moreover, who testified on complainants' behalf, seems to say that the measure of invention would be the same regardless of the material made use of in the construction of the box, A, whether of wood or of metal. In their printed argument counsel for complainants have made a "summary of evidence" in 11 paragraphs. In no one of these is the evaporation from the wooden sides of the box, A, put forward as a clear and distinctive quality of the patentee's combination,—a something which would and does in fact distinguish the same in mode of operation and result from prior devices. This feature, if it be really a feature at all, is not even mentioned or suggested in the said summary of evidence. It was, as I understand, a common practice in the art of refrigeration to make a structure with a metal-lined compartment above to hold the ice, and having drains to run off the water, and a compartment below for the articles to be preserved. At all events,—and if the evaporation at the sides is so far fanciful or theoretical as to amount to nothing in the way of distinguishing the complainants' device,—such structures as that of Douglas or Colton, for instance, seem to preclude the novelty of the combination in suit. The combination in suit specifies a metallic cover, E. Aside from this requirement, two equivalent methods of structure are shown in the specification. In one the cover, F, telescopes, as an ordinary box cover would, over the sides of the box, A, and rests on cleats. This cover is nailed or otherwise secured to the box, A. The function of the metallic cover, E, is to hold the ice and run the water off at the sides. How far it shall extend over the sides, provided it keeps the water from the interior of the box, A, seems to be a matter of no consequence. If the claim be construed with reference to the method of construction last above referred to, as put forth in the specification, then all the elements are found in the Douglas device. This, upon the assumption that the shape of the structure, whether rectangular or cylindrical, and the material, other than that of the metallic cover, E, out of which it is made, are not essential to the invention. I think the bill must be dismissed for want of equity.